State vs. Holland et al.

---

No. 11,734.

THE STATE OF LOUISIANA VS. ROBERT HOLLAND ET AL.

The District Judge having, in a criminal case, rendered judgments upon the appearance bonds of the accused, which by their terms were not final, but provisional judgments, subject to re-examination and recall, and having subsequently set these judgmens aside on rule, the orders of the court, setting them aside, and setting at large for future examination and determination al questions touching the rights of parties upon and under the bonds, are not such judgments or orders as are appealable to the Supreme Court.

APPEAL from the Seventh Judicial District Court, Parish of East Carroll. *Montgomery, J.*

---

*M. J. Cunningham*, Attorney General, and *Joseph E. Ransdell*, District Attorney, for Plaintiff and Appellant.

*Charles S. Wyly* for Defendant and Appellee.

The opinion of the court was delivered by

NICHOLLS, C. J.  In January, 1894, an indictment was found in the District Court for East Carroll parish, charging Lynmore Brown, Paul Gardham, Eddie Belden and Robert Holland with shooting with intent to commit murder.

In the minutes of that court of January 11, 1895, we find the following entry:

STATE
vs.                    No. 210.
LYNMORE BROWN ET AL.

The accused, Lynmore Brown, Eddie Belden, Paul Gardham, and the sureties on their appearance bond, were called at the door of the court house, to come into court and answer to the charge of shooting with intent to murder, and failing to do so, the sureties on their appearance bond were called on to produce the bodies of said accused, and failing to do so, it was ordered that there be judgment *nisi* against the principal and surety for the full amount of the appearance bond.

On the 18th of January, 1895, the three parties mentioned in this entry, and their sureties, moved to set aside the judgment " *nisi*," urging that the parties were not called on at the court house door, as required by law: that if they were ever called at all, it was at the door of the Stewart storehouse, which was at least five hundred yards from the court house.

On the same day Robert Holland (one of the parties indicted as stated) and his sureties moved " to set aside the pretended judgment " *nisi*," on the ground that it was physically impossible for him to have appeared at the time fixed, as he was a material witness in a murder case before the District Court for West Carroll parish, then in session; that he had been arrested and was then held as a witness by that court.  He further claimed that he had never been called at the court house door, but if called at all, it was at the door of the said Stewart storehouse.

On the same day (January 18, 1895), Brown, Belden and Gardham were arraigned, pleaded not guilty, and asked for trial by jury, and thereupon the court ordered that " the judgment *nisi*, as to them,

be set aside. To this action the District Attorney excepted, and tendered a bill of exceptions.

At a later hour of the same day Robert Holland appeared in court (after the jury had been discharged), was arraigned, pleaded not guilty, asked for trial by jury and moved again for the setting aside of the judgment *nisi.* The court ordered it to be set aside, and to this action of the court the District Attorney excepted and tendered a bill of exceptions.

On motion of the District Attorney "appeals were granted to the State from the orders setting aside the judgment *nisi* against said parties."

Appellees have moved to dismiss the appeal on the ground (1) that the order is not a final judgment or an interlocutory order causing the State irreparable injury, and. it is not appealable, the State's right to further proceedings being unaffected; (2) that said order theoretically and practically is one granting a new trial which is not appealable.

The State vs. Cole, 39 An. 938, and State vs. Wilkins, Jr., 37 An. 62, are relied upon in support of the first position, and State vs. Cole and Wharton's Criminal Practice, 7th Edition, paragraphs 3391,. 3394a, in support of the second.

We do not find in the record any of the appearance bonds referred to in the pleadings, orders of court and briefs; neither do we find any "judgment *nisi*" against Holland and his sureties. The transcript is very carelessly made up.

No appeal was taken by the State from the "*judgments nisi*" themselves.

The object of the appeal is to have the orders "setting them aside," be *themselves* set aside, and to have matters restored to the situation existing prior to these orders being rendered.

Were we to take jurisdiction in the matter and render the judgment which the State seeks, it would reinstate the "judgments *nisi*" against the parties and their sureties—nothing more. We could not alter the judgments themselves and convert them into absolute final judgments.

We could not be called upon in this appeal to review and declare error the action of the District Judge in not following, in respect to the appearance bonds, the provisions of Sec. 1032 of the Revised Statutes, but going back to the course of proceedings which existed an-

terior to 1837, and rendering *preliminary judgments* of forfeiture, or, as they have been styled, judgments *nisi.* For the purposes of our present actions and conclusions we have to take the orders of the District Judge, not as perhaps they *should have been,* but *as they are. As they are* they are mere *preliminary judgments* of forfeiture, *not final judgments.*

In State vs. Toups, 44 An. 899, we alluded to changes of the law in respect to the forfeiture of appearance bonds, and calling. attention to the case of the State vs. Frith, 14 La. 191, decided in 1838, we said:

"The law in force at that date provided that when a party was regularly called upon his recognizance and failed to appear, a judgment *nisi,* or preliminary decree of forfeiture, should be entered up in the criminal case, and in order that same be made final and exigible a rule must be taken upon the defaulting parties to show cause why a *final* judgment should not be entered up." But the law of 1837 so amended prior statutes in reference to recovery of the amount of bonds and recognizances in criminal matters as to authorize the courts having cognizance of such cases upon the failure of the parties to respond when called upon " to *forthwith enter* up judgment against both principal and securities *in solido* for the full amount of the bond, etc. (Sec. 1, Act No. 104 of 1837). This statute was reenacted in 1855, and has since been embodied in the Revised Statutes under the title of ' Criminal Proceedings,' and it is the law of to-day. Sec. 1032, Revised Statutes."

The District Court, by its "judgments *nisi,*" evidently intended to leave open for possibility of reconsideration the question of the liability of the parties accused and their sureties upon the bonds, and to extend to them an opportunity, before judgments should be made final, to show cause to the contrary. There was no direct reservation in favor of the parties in the judgments, but that was their clear import. In asking to have the judgments set aside, the parties availed themselves of a right which the court intended to reserve to them. The power and authority of the court, under the law, to make the reservation is not before us. In insisting that the provisional orders should *be kept in force, instead of being set aside,* either on appplication of parties or *ex proprio motu,* the State, for the purposes of this case, affirms the power. The power to make the provisional judgments being conceded, the power to rescind

them follows, for interlocutory or provisional orders in their nature are subject to the control of the court. We could not, by any decree which we might render in this cause, convert judgments which on their face are provisional into final ones. As the judgments stood before they were set aside they were not susceptible of execution.

To make them susceptible of execution further proceedings would have to be taken contradictorily with the defendants. As they now stand no mere lapse of time or *ex parte* subsequent decree would make them absolute. On contradictory proceedings being taken the parties to the bonds would undoubtedly be entitled to be heard and to show cause.

The case is argued before us from the standpoint of the serious blow to the administration of justice which would flow from permitting District Courts to set aside judgments of forfeiture of bonds when once rendered unless and until the parties accused should have " appeared, been tried, convicted, and punished or been acquitted." What is said may be true when final judgments have been in fact rendered, but where, as in this case, *provisional judgments* have been rendered forcedly entitling at some future stage of the proceedings the parties to have a day in court, the injurious results are not so apparent.

In this case the objections urged were directed exclusively against the proceedings which led up to the forfeiture of the bonds, and did not involve any question as to the validity of the bonds themselves, or raise any question as to eventual liability under them. If in the proceedings the legal requirements were not followed, it appears to us that the sooner that fact should appear and be corrected the better. These, however, are considerations foreign to the issue before us.

The District Court having rendered judgments of forfeiture of the bonds which were not final, but provisional judgments subject to recall, the orders of the court setting them aside, and setting at large for future examination and determination all questions touching the rights and obligations of parties upon and under the bonds, are not such judgments or orders as in a criminal case are appealable to this court. The appeals taken herein are therefore dismissed.